UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID M. JOHNSON | ) | |
| | ) | No. 16 C 1182 |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| LYNETTE T. THOMPSON-SMITH, RONALD RASCIA, WILLIAM BLUMTHAL, AND UNKNOWN DEFENDANTS, | ) ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Johnson brings this § 1983 action seeking redress for harms he alleges to have suffered in connection with the dismissal of an arbitration action he brought before the Illinois Workers Compensation Commission (IWCC). R. 6. Specifically, Johnson seeks damages from Defendant Lynette Thompson-Smith, the IWCC arbitrator assigned to his case, who he alleges wrongfully dismissed his action without a hearing on the merits. Johnson also brings claims against Defendants Ronald Rascia, Chairman of the IWCC, and William Blumthal, Director of the IWCC's Fraud Unit, for their alleged failure to intervene, whether by negligently hiring or inadequately supervising Thompson-Smith, by failing to investigate Johnson's written complaints, or by otherwise conducting the business of their respective offices in a negligent manner. Simply put, Johnson alleges that the Defendants failed to ensure his "right to a fair hearing," and that as a consequence, he has been unable to collect workers' compensation, receive necessary

1

medical treatment, or collect fringe benefits owed under the terms of his employment agreement.

Defendants have moved to dismiss Johnson's claims arguing (1) that as quasi-judicial and public officials, they are immune from suit as to the conduct alleged, and (2) that even in the absence of immunity, Johnson has failed to state plausible claims against them. R. 14. The Court agrees in both regards. For the following reasons, Defendants' motion is granted and Johnson's complaint is dismissed with prejudice.

**Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

In evaluating a *pro se* complaint, the Court applies a less stringent standard than formal pleadings drafted by lawyers. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). However, the court need not ignore facts set forth in the complaint that undermine the plaintiff's claim, nor is the court required to accept the plaintiff's legal conclusions. *Bullock v. Peters*, 1993 WL 315561, at *1 (7th Cir. 1993) (unpublished disposition); *Faulker v. Otto*, 2016 WL 1381795, at *2 (N.D. Ill. Apr. 5, 2016) (noting even *pro se* litigants must comply with the rules (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

**Facts**

Johnson alleges that as of May 2013, he was a full time driver for Melton Truck Lines (Melton), an Oklahoma company, and a beneficiary of Melton's Occupational Injury Benefit Plan. R. 6 ¶¶ 11-12. On or about May 3, 2013, Johnson injured his left hand while on the job in Alabama. *Id.* ¶ 13. The injury left Johnson's fingers "frozen," preventing him from lifting heavy items or operating a motor vehicle. *Id.* ¶¶ 13-15. He was advised to seek specialized medical treatment for this condition. *Id.*

Shortly thereafter, in July 2013, Johnson brought a workers' compensation claim against Melton before the IWCC (Case No. 13 WC 21814). *See* R. 14 at 17

3

(Johnson's application for benefits under the Illinois Workers' Compensation Act ("IWCA")); *see also* IWCC case portal ("Case Portal"), *available at* http://www.iwcc.il.gov/caseinfo.htm (last visited June 20, 2016) (cataloguing standard docketing information).[1] The IWCC is empowered by the IWCA to designate an arbitrator to determine any disputed questions of law or fact regarding liability for accidental injuries arising out of and in the course of employment. *See* 820 ILCS 305/19(a). Thompson-Smith, as previously noted, was the arbitrator assigned to Johnson's claim. *See* Case Portal.

In early 2015, Melton moved to set the case for trial, or in the alternative, to dismiss for lack of jurisdiction or failure to prosecute.[2] *See* R. 14 at 22-23. At least

---

[1]  In deciding a motion to dismiss, the Court is permitted to take judicial notice of arbitration orders and filings "to establish the fact of such [arbitration]." *Green Tree Fin. Corp. v. Honeywood Dev. Corp.*, 2001 WL 62603, at *3 n. 4 (N.D. Ill. Jan. 24, 2001); *see also Johnson v. Great West Cas. Co.*, 2015 WL 4751128, at *1 n. 3 (N.D. Ill. Aug. 11. 2015) (citing authority) (considering these very arbitration documents on a motion to dismiss). Also, documents attached to a motion to dismiss are considered part of the pleadings if, as here, they are referred to in the plaintiff's complaint and are central to his claim. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[2]  After this motion was filed with the IWCC, Johnson filed an eight-count complaint in this district alleging that Melton (through its insurer, Great West Casualty Company) had advanced "patently false" misrepresentations in its motion to dismiss the arbitration regarding which state's workers' compensation agency had jurisdiction over the claim and which state's law governed the rules of decision. *See Johnson v. Great West Cas. Co.*, No. 14 C 7858 (N.D. Ill.), R. 7 (Tharp, J.). Finding that Johnson's complaint "betray[ed] a misunderstanding of an adversarial system of dispute resolution," Judge Tharp dismissed the suit without prejudice finding, among other things, that Johnson's claims against Melton were within the exclusive province IWCC. *Johnson*, 2015 WL 4751128 at *2-4. A motion to dismiss Johnson's amended complaint in that matter remains pending.

  Johnson has brought two other actions in this district against Melton, both of which are now closed. *See Johnson v. Melton Truck Lines, Inc., et al.*, 14 C 8817

one trial date certain was set in the case, but no trial ever took place.[3] *See* Case Portal; *see also* R. 14 at 25. For reasons the Court is unable to ascertain from the current and public record, Thompson-Smith granted Melton's motion and dismissed the case with prejudice on September 22, 2015.[4] *See* Case Portal; *see also* R. 14 at 25. Johnson did not appeal the dismissal to the state circuit court as permitted by Illinois law, 820 ILCS 305/19(f)-(g).[5] Instead, this lawsuit followed.[6]

---

(N.D. Ill.) (Dow, J.) (dismissed for failure to pay filing fee); *Johnson v. Melton Truck Lines, Inc., et al.*, 16 C 1934 (N.D. Ill.) (Shah, J.) (voluntarily dismissed by Johnson prior to any appearance by the defendants). Johnson also has an unrelated employment discrimination lawsuit pending in this district. *Johnson v. Lew, et al.*, 14 C 2233 (N.D. Ill.) (Lee, J).

[3] While his Illinois claim was pending, Johnson brought another workers' compensation action against Melton before the Ohio Industrial Commission. Following a preliminary hearing in the matter, the claim was disallowed on the basis that the commission lacked jurisdiction to decide it. *See* R. 14 at 19-20. No appeal was taken, and Johnson does not dispute that the dismissal, though not on the merits, was a proper exercise of arbitral authority.

[4] From what the Court can glean from Johnson's amended complaint and the relevant associated motion papers, the basis of dismissal may have been a finding by Thompson-Smith that under the terms of Johnson's employment contract, Oklahoma has exclusive jurisdiction over Johnson's workers' compensation claims. *See, e.g.,* R. 28 at 8. Alternatively, or perhaps in addition, the dismissal may have related to Johnson's lack of representation (his two attorneys both having been granted leave to withdraw from the matter) and Johnson's failure to appear for hearings as ordered. *See* R. 6 ¶ 23; Case Portal.

[5] Direct review of IWCC decisions is limited to an action in state court. *See* 280 ILCS 305/19; *see also Suggs v. C.W. Transport, Inc.*, 421 F.Supp. 58, 62 (N.D. Ill. 1976) Still, this Court has jurisdiction to consider whether any of the procedures applied in the arbitration violated any of Johnson's constitutional rights. *Id.* at 61-63 (dismissing on the merits complaint alleging due process violations in Illinois workers' compensation proceedings). That Johnson failed to pursue state remedies does not strip this court of jurisdiction because exhaustion is not required under § 1983. *Id.* at 62.

5

**Discussion**

I. <u>Immunity from Suit</u>

Courts have been admonished to resolve immunity issues at the earliest possible stage of litigation, preferably before allowing discovery. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Indeed, the Seventh Circuit has observed that "no principle forbids a court to notice that such a defense exists, is bound to be raised, and is certain to succeed when raised." *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir. 1994). Where a defendant's immunity is absolute, a claim against him cannot stand. *See Faulkner v. Otto*, 2016 WL 1381795, at *5 (N.D. Ill. Apr. 5, 2016) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Where immunity is qualified, dismissal is also required if the allegations of the complaint, taken as true, fail to allege the violation of a clearly established right. *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1012 (N.D. Ill. 2012) (citing *Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990)).

    1.    <u>Absolute Immunity—Thompson-Smith</u>

Defendant Thompson Smith is shielded from liability by the doctrine of absolute judicial immunity. *See Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012) ("Parties who, although not judges, engage in adjudication such as private

---

[6]    On the heels of this lawsuit, Johnson also filed two more federal lawsuits against Melton and others in the Northern District of Oklahoma. The first, Case No. 16-cv-229 (filed Apr. 26, 2016), alleges antitrust violations and was dismissed on Johnson's own motion. The second, 16-cv-283 (filed May 19, 2016), alleges a variety of constitutional violations and torts stemming from non-payment of welfare plan benefits and alleged misconduct in the Illinois arbitration proceedings, R. 2. Johnson was granted leave to proceed *in forma pauperis* in that matter, R. 4, but summonses have not yet been served.

arbitrators . . . enjoy absolute immunity.") (internal parentheses omitted); *see also Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 843 (7th Cir. 2002) (collecting authority) (referring to the doctrine as applied to arbitrators as "arbitral immunity"). The doctrine of absolute judicial immunity protects decision makers from undue influence and from frivolous and vexatious reprisals by dissatisfied litigants. *See id.* The doctrine recognizes that "most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing [judicial or quasi-judicial decision-makers] to personal liability." *Forrester v. White,* 484 U.S. 219, 226-27 (1988); *see also Int'l Med. Group, Inc.*, 312 F.3d at 843. On this premise, absolute immunity extends to all acts taken by arbitrators within the scope of their adjudicative duties, even those alleged to be malicious, irregular, or erroneous. *Id.* at 227; *Dellenbach v. Letsinger*, 889 F.2d 755, 759 (7th Cir. 1989) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."); *see also Sacks v. Dietrich*, 663 F.3d 1065, 1070 (9th Cir. 2011) ("The pivotal question is 'whether the claim at issue arises out of a decisional act.'").

Johnson concedes that in dismissing his workers' compensation claim, Thompson-Smith was "acting in the normal scope of an [a]rbitrator's duties." R. 6 ¶¶ 7, 22. He complains, specifically, that Thompson-Smith "(a) allow[ed] [Melton] to allege [a] factual dispute without evidence or a pre-deprivation hearing; (b) allow[ed] [Johnson's arbitration] counsel to withdraw without any hearing on

7

the merits; (c) stat[ed] "this matter cannot go to trial with the Petitioner representing himself"; and (d) grant[ed] [Melton] a dismissal of [Johnson's] claim without rendering a final decision on the merits." *Id.* ¶ 23. The conduct Johnson details, decisional rulings on the progress and disposition of his case, are precisely the type of "paradigmatic judicial acts" courts have held absolutely protected from civil suit. *See Forrester*, 484 U.S. at 227; *see also Sampson v. Boharic*, 1993 WL 484063 (7th Cir. Nov. 23, 1993) (unpublished disposition) (judge immune from complaint alleging monetary damages stemming from rulings on recusal, discovery, and evidentiary issues); *Faulkner*, 2016 WL 1381795 at *5 (judge immune from civil suit alleging misconduct in the administration of foreclosure proceedings).

There is, however, an exception to absolute judicial immunity, which Johnson argues applies here: an arbitrator may be subject to civil liability "when [s]he has acted in the clear absence of jurisdiction."[7] *Stump*, 435 U.S. at 356. The term "jurisdiction" refers to a decision-maker's "power to decide a case or issue a decree." Black's Law Dictionary (10th ed. 2014). To forfeit the protections of absolute immunity, a judge or arbitrator must make an adjudicatory decision "know[ing] that he lacks jurisdiction, or act[ ] despite a clearly valid statute or case law

---

[7] The Supreme Court has explained that "[judicial] immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (internal citations omitted). Conceding, as noted, that the complained of conduct was taken in Thompson-Smith's capacity as an arbitrator, Johnson argues the second exception only—that Thompson-Smith acted in the complete absence of jurisdiction when she dismissed his claim without first holding a hearing on the merits. R. 28 at 8.

8

expressly depriving him of jurisdiction." *Wagshal v. Foster*, 28 F.3d 1249, 1254 (D.C. Cir. 1994) (internal brackets and quotations omitted) (citing authority); *see also Faulkner*, 2016 WL 1381795 at *5 ("'Jurisdiction' is construed quite broadly in this context, and the standard will be met only in unusual cases where, for example, a judge authorized to hear only probate cases conducts a criminal trial."); *Renner v. Stanton*, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) ("A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which presides.").

Johnson has provided nothing here to suggest that as a duly assigned workers' compensation arbitrator, Thompson-Smith was not authorized to preside over his workers' compensation claim. Rather, Johnson advances a conclusory (and circular) argument that misunderstands the meaning of the term "jurisdiction." He argues:

> Defendant Thompson-Smith [ ] has knowingly acted in absence any jurisdiction to deny Plaintiff of a fair hearing because of the employer's so-called "defense" that the "employment contract indicated that Plaintiff's claim was subject to Oklahoma law." . . . Accordingly, Defendant Thompson-Smith is a public official who has deprived Plaintiff of his *federal* rights and she does not enjoy immunity from an award of damages for the harm suffered by Plaintiff.

R. 28 at 9-10 (emphasis in original). Johnson does not contend that Thompson-Smith lacked the authority to decide his case. He argues instead that she made an incorrect ruling (or series of incorrect rulings), which, in his view, prevented him from vindicating certain of his "federal" rights. Even if it were true that Thompson-

9

Smith's rulings in the arbitration were erroneous (an issue the Court need not consider), it does not follow as Johnson mistakenly reasons that she lacked authority to make them. It bears reiteration that to the extent Johnson disagreed with any of Thompson-Smith's conduct or rulings in his case, he was entitled to seek review through the state courts. Without excuse or explanation, he opted not to do so. Arbitral immunity prevents him from now recasting his displeasure with the dismissal of his case as a federal claim for civil damages.

Since her jurisdiction is not actually in dispute, Thompson-Smith is absolutely immune for all decisional acts taken in Johnson's case. She is dismissed from this case with prejudice. *See Faulker*, 2016 WL 1381795 at *5.

2. Qualified Immunity—Rascia and Blumthal

In his Complaint, Johnson alleges that Rascia, acting within the scope of his authority as Chairman of the IWCC, negligently trained, supervised, and "entrusted [Thompson-Smith with] the fair hearing of Plaintiff's [workers' compensation claim]," R. 6 ¶ 78. Johnson alleges that Rascia should have known by virtue of his position as well as certain unspecified statistical data and internal reports that "[Johnson's] civil rights were being violated by Thompson-Smith." *Id.* ¶¶ 24-25. Finally, Johnson alleges that in the two years his claim was pending before Thompson-Smith, he "made numerous complaints in writing to Defendant Rascia" about Thompson-Smith's administration of his case, which Rascia failed to heed. *Id.* ¶ 79. As against Blumthal, Johnson alleges that as Director of the Workers' Compensation Fraud Unit ("WCFU"), Blumthal failed to fulfill the

10

obligations of his office set forth in Section 25.5 of the IWCA.[8] Specifically, Johnson alleges that Blumthal failed to detect and prevent fraud by Thompson-Smith in the administration of his case.[9] *Id.* ¶¶ 96-99. On these facts, Johnson alleges that Rascia and Blumthal failed to intervene to stop Thompson-Smith from dismissing his case in violation of his federal rights. *Id.* ¶¶ 26, 82, 98.

Rascia and Blumthal are protected from suit by the doctrine of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 237 (holding that qualified immunity is "an immunity from suit rather than a mere defense to liability"). The doctrine of qualified immunity protects government officials from lawsuits for damages when their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *See Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 891 (7th Cir. 1993).

---

[8] Section 25.5 prohibits fraud by employees, employers, insurers, healthcare providers and others relating to the presentment of claims for workers' compensation benefits. 820 ILCS 305/25.5(a)-(b). It also authorizes the establishment of a "fraud and noncompliance" unit—the WFCU—to implement systems to predict and detect fraud, to process reports of fraud, to investigate incidences detected or reported, and to refer violations to the proper authorities for prosecution. *See* 820 ILCS 305/25.5(c)-(e-5). It does not require the WFCU to track data or otherwise investigate duly appointed IWCC arbitrators, nor does it authorize the WFCU to intervene in arbitration proceedings.

[9] Johnson does not allege that he filed a complaint with Blumthal and/or the WFCU regarding Thompson-Smith or any fraud in the presentment of evidence in his case. The Court thus construes Johnson's claim against Blumthal to be based on a generalized failure to take measures to protect Johnson's "federal" right to a hearing on the merits of his petition. The claim against Blumthal fails as a matter of law. As previously noted, Section 25.5 neither requires nor authorizes the WFCU or Blumthal to investigate or intervene against Thompson-Smith as Johnson imagines he should have. Even in the absence of qualified immunity (discussed above) the count against Blumthal fails to state a cognizable claim for relief.

Qualified immunity is grounds for dismissal when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established right. *See McGreal*, 892 F. Supp. 2d at 1012.

As set forth above, Johnson alleges that by virtue of their failure to intervene, Rascia and Blumthal "violated his *federal* right[ ] to [ ] a fair hearing," and as a consequence infringed his "liberty interest in his medical needs[,] and impair[ed] the enforcement of [his] employment contract including fringe benefits." R. 28 at 1 (emphasis in original). He cites as the source of these rights the substantive and procedural protections of the Due Process Clause of the Fourteenth Amendment, the Takings Clause of the Fifth Amendment, and the Contract Clause at Article 1, Section 10 of the Constitution. Each of these alleged constitutional violations is addressed below, though the Court considers them in reverse order to avoid redundancies in its analysis.

### 1. Government Impairment of Contract

It is well established that the Contract Clause in Article I, section 10 of the Constitution prohibits only government impairment of contract by legislation. *See Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924) ("It has been settled by a long line of decisions, that the provision of section 10, article 1, of the federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgments of courts. The language—'No state shall *pass any law* impairing the obligation of contracts'— plainly requires such a conclusion.") (emphasis in original), *accord Propst v. Bd. of Educ. Lands & Funds of Neb.*, 103 F. Supp. 457, 460 (D. Neb. 1951). Johnson does

not claim that any legislation interfered with the benefits he believes he is owed under his employment contract. Indeed, Johnson claims that legislation (the IWCA) is among the sources of his rights to workers' compensation. *See* R. 14 at 17. Because Johnson's impairment claims are directed at Thompson-Smith's adjudicatory acts during arbitration and not at the application of any law, Johnson has failed to allege a violation of a clearly established constitutional right.

### 2. *Unconstitutional Taking*

A claimant under the Takings Clause must show that the government, by some specific action, took a private property interest for a public use without just compensation. *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 294 (1981). Johnson's Takings Clause claim, as best the Court can understand it, is that in dismissing his workers' compensation petition, Thompson-Smith "took" his property interest in the disability benefits he believes he is owed. *See* R. 28 at 5 ("Plaintiff has an expectation of workers' compensation under the Illinois Workers' Compensation Act . . .").

This claim fails for the fundamental reason that Johnson has not established an entitlement to benefits under the IWCA. To have a property interest in a public benefit, a plaintiff must have "more than a presumption that [he] is eligible for full benefits or a unilateral expectation of such an interest." *Escoe v. Shalala*, 842 F. Supp. 646, 651-52 (N.D.N.Y. 1994), *aff'd,* 41 F.3d 1500 (2d Cir. 1994). He must, instead, have a legitimate, vested claim of entitlement. *Id.* (finding no property interest in social security benefits where the Social Security Administration rejected

13

plaintiffs application on the basis that he was not actually retired as claimed). Because Johnson never proved his eligibility for workers' compensation, he does not have a protectable property interest in medical or fringe benefits as claimed. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999) (holding that employees do not have a protectable property interest in workers' compensation benefits until they prove every element of entitlement under state law). His Takings Clause claim thus fails to allege the violation of a clearly established constitutional right.

### 3. *Procedural Due Process*

The first inquiry in every procedural due process challenge is whether the plaintiff has been deprived of a protected interest in "liberty" or "property." *See Sullivan*, 526 U.S. at 59. Only after finding the deprivation of a protected interest do courts look to whether the State's procedures comport with due process. *Id.* Where the deprivation is the result of "random and unauthorized acts," as opposed to an "established state procedure," the deprived person is entitled only to a meaningful post-deprivation remedy. *Id.* at 944. Consequently, a plaintiff bringing a procedural due process claim must allege and prove that he availed himself of post-deprivation remedies or that the available remedies were inadequate. *Id.* Failure to do so is fatal to a procedural due process claim. *Id.* In summary, a procedural due process claim requires a plaintiff to show three things: "that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of

law." *Wicks v. Barron*, 2015 WL 1598102, at *3 (N.D. Ill. Apr. 8, 2015) (quoting *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010)). Johnson fails in all three regards.

First, for the reasons set forth above, Johnson does not have a protected property interest in workers' compensation benefits. Second, because Johnson never had a vested interest in those benefits, the dismissal of his case without an award cannot amount to a deprivation. *See Proctor v. McNeil*, 14 F. Supp. 3d 1108, 1115 (N.D. Ill. 2014) ("[I]t is well established that the federal entitlement is to process, not to a favorable outcome.") (internal quotation marks and citation omitted). Failing to meet these necessary preconditions dooms Johnson's procedural due process claim. *See Wicks*, 2015 WL 1598102, at *3.

Even so, Johnson focuses his arguments on the final element of the due process triad.[10] He correctly notes that "due process requires the opportunity to be

---

[10] Johnson cites selectively from the Seventh Circuit's opinion in *Reed v. Illinois,* 808 F.3d 1103 (7th Cir. 2015). According to Johnson, *Reed* stands for the proposition that he is entitled to "a full and impartial opportunity to litigate" his disability claim before the IWCC. R. 28 at 11 (quoting *Reed*, 808 F.3d at 1108). *Reed*, which never once mentions the phrase "due process," does not support Johnson's argument. In *Reed*, the Seventh Circuit considered whether a severely disabled *pro se* plaintiff could assert a claim under the Americans with Disabilities Act (ADA) based on a state court judge's refusal to allow her reasonable accommodations at trial. *Id.* at 1105-06. The issue before the court was whether the plaintiff was collaterally estopped from asserting a federal claim by the state appellate court's decision affirming the defense verdict and disallowing a new trial. The Seventh Circuit said that the doctrine of collateral estoppel was subject to a "fairness" exception which applied under the unique facts of the case. *Id.* at 1109. The court concluded (and Johnson enthusiastically asserts):

> For one court (the state court) to deny accommodations without which a disabled plaintiff has no chance of

15

heard at a meaningful time and in a meaningful manner," and contends that the dismissal of his case was in itself a deprivation of his rights. Of course, there is no generalized right to a hearing on the merits of any claim, particularly if the tribunal before which the claim is brought lacks jurisdiction to decide it. Nor is there a guaranty to a hearing on the merits of a defective claim or a claim a petitioner fails to prosecute. Even if the Court were to indulge Johnson's argument that he was entitled to be heard, however, the third prong of the procedural due process analysis still would not be met. Here, the alleged harm was the result of Thompson-Smith's "random and unauthorized" dismissal of his case. Accordingly, a post-deprivation remedy was all the law required. Because Johnson opted not to pursue his appellate remedies (and makes no claim now that the available procedures were inadequate or fundamentally unfair), he cannot show he was deprived due process of law. *See Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 805-06 (7th Cir. 2010) (holding that where a plaintiff alleged inadequate notice of a pre-deprivation hearing but failed to avail herself of post-deprivation remedies, she could not allege a procedural due process claim where the harm was the result of the random and unauthorized

> prevailing in her trial, and for another court (the federal district court) on the basis of that rejection to refuse to provide a remedy for the discrimination that she experienced in the first trial, is to deny the plaintiff a full and fair opportunity to vindicate her claims.

*Id. Reed* thus held that where the application of the doctrine of collateral estoppel would perpetuate an underlying injustice, the doctrine does not apply. The *Reed* rule is not, as Johnson contends, that every disabled litigant is entitled to full and fair hearing at the time and place of his choosing. *Reed* has little bearing on this case.

conduct of state employees); *see also Krison v. Nehls*, 767 F.2d 344, 349 (7th Cir. 1985) (explaining that due process does not require that the opportunity to be heard "be afforded at the time and in the manner of one's own choosing"). Johnson has again failed to allege the violation of a clearly established constitutional right.

   4.  *Substantive Due Process*

"Both the Supreme Court and [the Seventh Circuit] have emphasized how limited the scope of the substantive due process doctrine is." *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003) (internal quotation omitted). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Id.* Fundamental rights include "things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity." *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). "[W]hen a substantive due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will even engage in this deferential rational-basis review." *Lee*, 330 F. 3d at 467.

Johnson does not allege the encroachment of a fundamental right.[11] For the reasons already described, he also does not allege the violation of a protected

---

[11] Johnson seems to argue that his right to bodily integrity was violated insofar as he was disabled and denied benefits to cover his medical expenses, leaving him unable to obtain the medical treatment he needed to recuperate from his injury. R.

17

property interest, the inadequacy of state law remedies, or any independent constitutional violation. This is sufficient to find that his substantive due process claim fails. Though the Court need not consider the character of Thompson-Smith's conduct in dismissing Johnson's case, it nevertheless finds that her dismissal on Melton's motion was not the type of arbitrary or irrational conduct that implicates Fourteenth Amendment substantive due process concerns.

Because Johnson's allegations, taken as true, fail to allege the violation of a clearly established right, Rasia and Blumthal are entitled to qualified immunity. The claims against them must be dismissed.

II. <u>Failure to State a Claim</u>

In determining that Rascia and Blumthal are entitled to qualified immunity, the Court simultaneously determines that Johnson has failed to allege facts sufficient to support Count I (procedural due process), Count II (substantive due process), and Count III (unconstitutional taking and government interference with contract) against Thompson-Smith, *see Cnty. of Sacramento*, 523 U.S. at 842 n. 5 (instructing that the preliminary inquiry in analyzing the application of qualified immunity is "whether the plaintiff has alleged a deprivation of a constitutional

---

28 at 14. Johnson bases this argument on a line of cases involving the "state-created danger" doctrine. That doctrine permits substantive due process claims "where the state creates a dangerous situation or renders citizens more vulnerable" to private acts of violence, provided the state's failure "shock[s] the conscience." *See Vaughn v. City of Chi.*, 2014 WL 3865838, at *2 (N.D. Ill. Aug. 5, 2014) (citing *King ex rel. King v. East St. Louis Sch. Dist. 189,* 496 F.3d 812, 817-18 (7th Cir. 2007)). That doctrine does not apply here because nothing the defendants did caused Johnson's injury or rendered him vulnerable to private acts of violence and none of the conduct Johnson alleges satisfies the "shocks the conscience" element of a state-created danger claim. *See id.* at *3.

right at all"), as well as Counts IV and V (failure to intervene) against Rascia and Blumthal, *see Leaf v. Shelnutt*, 400 F.3d 1070, 1093 (7th Cir. 2005) (explaining that to state a claim for failure to intervene, the plaintiff must first allege an underlying constitutional violation).

**Conclusion**

Defendants' motion to dismiss, R. 14, is therefore granted. Generally, courts should grant litigants, especially *pro se* litigants, leave to amend after dismissal of the first complaint "unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (emphasis in original) (citing authority); *Delonte v. Duncan Solutions, Inc.*, 606 Fed. Appx. 839, 840 (affirming dismissal of original complaint where the statute of limitations on the asserted claim had elapsed). The Court cannot conceive of how any amendment could render the defendants liable under the circumstances of this case, and therefore the dismissal is with prejudice.

Plaintiff's motion to file instanter (R. 30) is granted. Plaintiff's motions to strike and for sanctions (R. 26, R. 27), motion to appoint a special master (R. 29), motion to set a briefing schedule (R. 32), and request for judicial notice (R. 37) are denied as moot.

This case is closed.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: August 23, 2016